# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Hernandez v. Pritikin*, 2012 IL 113054

| | |
|---|---|
| Caption in Supreme Court: | JESSE E. HERNANDEZ *et al.*, Appellees, v. JEFFREY PRITIKIN, Special Representative of the Estate of Isadore Bernstein, Deceased, *et al.*, Appellants. |
| Docket No. | 113054 |
| Filed | December 13, 2012 |
| Held *(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)* | Defendants in a refiled legal malpractice action who sought dismissal on the basis of *res judicata* had not met their burden of proving its essential element of a final judgment where they relied on oral rulings of successor judges as to when the discovery rule had commenced to run for purposes of limitations. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Jeffrey Lawrence, Judge, presiding. |
| Judgment | Affirmed and remanded. |

| Counsel on Appeal | Hinshaw & Culbertson LLP (Matthew R. Henderson and Timothy G. Shelton, of counsel), and Donohue Brown Mathewson & Smyth LLC (Donald J. Brown, Jr., and Karen Kies DeGrand, of counsel), all of Chicago, for appellants. |
|---|---|
| | Donald L. Johnson, Julie A. Boynton and Joseph T. Gentleman, of Chicago, for appellees. |
| | Elliot R. Schiff, of Schiff Gorman LLC, and David R. Nordwall, all of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |
| Justices | JUSTICE KARMEIER delivered the judgment of the court, with opinion. Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1    The overarching issue in this appeal is whether the circuit court of Cook County erred in dismissing plaintiffs' refiled legal malpractice action as barred by *res judicata*. The appellate court held that it did. 2011 IL App (1st) 102646. We allowed defendants' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Because the defendants, as the parties seeking to invoke the doctrine of *res judicata*, have not borne their burden of proving a final judgment was entered for purposes of the doctrine's application, we affirm the judgment of the appellate court.

¶ 2                          BACKGROUND

¶ 3    The facts that follow are taken from the parties' pleadings, orders of record, and the transcripts that have been provided as part of the record on appeal. For a better understanding of the case, we offer a preliminary chronology of principal events, based on facts that appear to be uncontested. Jesse Hernandez, the plaintiff claiming to have been physically injured/disabled, worked for Central Steel & Wire Company from May of 1968 through March of 1995. He developed physical problems in the early 1990s, and was ultimately diagnosed with Parkinson's disease. For a period of time from 1995 to 1996, he was represented by the law firm of Spector & Lenz, which filed a social security disability claim on his behalf. In early 1999, he met with the defendant attorneys herein, who, in March of 1999, filed a workers' compensation claim for him. They continued representing him into late 2002. The application for adjustment of claim that defendants filed on Jesse's behalf indicated that he had been "exposed to chemicals" and the nature of his injury was "to be

proven." In 2004, Jesse retained new attorneys, who filed an action in the circuit court against various companies claimed to have been responsible for the manufacture and sale of chemicals contributing to his physical injury/disability. When that action was dismissed as time-barred, plaintiffs filed a legal malpractice action against the defendants in this case. The action at issue here is a case refiled in 2009, after the original action—filed in 2005—was voluntarily dismissed by plaintiffs. With that overview, we discuss more fully the original legal malpractice action filed against these defendants in 2005.

¶ 4    In 2005, plaintiffs, Jesse and Yolanda Hernandez, filed a legal malpractice action against Jesse's former attorneys, defendants Isadore Bernstein, John L. Grazian, Richard S. Volpe, and Bernstein and Grazian, P.C., a professional corporation engaged in the practice of law. In their initial complaint, the plaintiffs alleged that Jesse hired defendants in 1999 to represent him with respect to injuries he sustained at work. In that complaint, plaintiffs specified that "Jesse *** suffers from Parkinson's disease caused by the injuries at work." Plaintiffs claimed that defendants owed them a duty "to inform them of all potential claims and causes of action they possessed or which might arise from the injuries in question." As noted, in March of 1999, the defendants filed a workers' compensation application for Jesse.

¶ 5    Notwithstanding, plaintiffs alleged that defendants were negligent insofar as they: (a) failed to advise plaintiffs that they might have claims against parties *other than* Jesse's employer to recover for the injuries Jesse suffered at work; (b) failed to file an action against others who had contributed to the events and conditions which caused injuries to Jesse; and/or (c) failed to advise plaintiffs that they needed to retain other counsel to file an action against others who had contributed to the events and conditions which caused injuries to Jesse.

¶ 6    Plaintiffs stated that they first learned from new attorneys, in 2004, that a claim could have been made against parties other than Jesse's employer for his injuries. Plaintiffs' new attorneys took over the handling of Jesse's workers' compensation claim, and also filed an action in the circuit court against several companies claimed to have contributed to "the events and conditions which caused the injuries." The action against those companies—based on theories of strict liability and negligence—was dismissed on August 12, 2005, as time-barred—Judge Kathy Flanagan finding: "The evidence here shows that Plaintiff here clearly was possessed of sufficient knowledge to put him on notice that he was injured and that his injury was wrongfully caused in 1999 when he filed his original Adjustment of Claim. It was incumbent upon him to then investigate further." Judge Flanagan's dismissal prompted the legal malpractice action against these defendants, the theory being that if *plaintiffs* were on notice as of that date that actions might be filed against parties other than Jesse's employer, so were these defendants. In their complaint, plaintiffs claimed, but for the negligence of these defendants, they would have had "good, valid and valuable causes of action" and would have "in timely manner" "prosecuted those actions to final judgment or settlement."

¶ 7    Defendants moved to dismiss plaintiffs' complaint, arguing, *inter alia*, that the statute of limitations had run on plaintiffs' product liability claim before defendants were retained as Jesse's attorneys.

¶ 8        A hearing on defendants' motion was held on August 7, 2006, before Judge Donald Suriano. At that hearing, the parties initially focused on the significance of Judge Flanagan's finding in the dismissed product liability action that Jesse was on inquiry notice as of the filing of his application for workers' compensation in March of 1999 that his injuries might have been wrongfully caused by parties other than his employer, *i.e.*, that the statute of limitations for a personal injury or product liability action (735 ILCS 5/13-202, 13-213 (West 1998) (two-year limitation periods)) began to run, at least, by that date.

¶ 9        In the end, however, Judge Suriano concluded that Jesse was on inquiry notice, for purposes of the personal injury and product liability statutes of limitation, much earlier than was reflected by Judge Flanagan's ruling. Judge Suriano stated: "I guess, I'm going to say the statute of limitations began to run, at the latest, his last day of employment, which in [*sic*] '95. According to those numbers then, the defendant should prevail on his motion, right? Am I right?"

¶ 10       Counsel for plaintiff conceded that the judge was correct with respect to the allegations of the original complaint, but counsel asked for, and was granted, leave to file an amended complaint, *adding* allegations that defendants were negligent for failing to file a malpractice suit against the Spector law firm for failing to file a product liability action on plaintiffs' behalf.

¶ 11       The ensuing written order, signed by Judge Suriano, and filed August 7, 2006, simply states that the "Defendants' motion to dismiss is granted," that "plaintiffs are given 30 days to file an amended complaint or until September 7, 2006," and that "Defendants are given 28 days to answer or otherwise plead or by October 5, 2006." The word "prejudice" does not appear in the order of dismissal; nor is there any indication that plaintiffs were precluded from pursuing any particular theory in support of recovery.

¶ 12       The amended complaint ultimately filed by plaintiffs added factual allegations to support the alternative theory that defendants were also negligent insofar as they failed to advise plaintiffs of the possibility of a legal malpractice action against the law firm of Spector & Lenz "for failing to file a claim against [Jesse's] employer or third parties as alleged in the lawsuit discussed below and/or failing to advise Jesse and Yolanda to seek counsel with respect to those claims before the statute of limitations expired on those claims." The amended complaint retained the allegations of the original complaint that the defendants herein breached the duties they owed plaintiffs when they: (a) failed to advise plaintiffs that they might have claims against parties other than Jesse's employer to recover for the injuries Jesse suffered at work; (b) failed to file an action against others who had contributed to the events and conditions which caused injuries to Jesse; and (c) failed to advise plaintiffs that they needed to retain other counsel to file an action against others who had contributed to the events and conditions which caused injuries to Jesse.

¶ 13       The complaint added significant factual allegations apparently aimed at establishing a basis for application of the discovery rule so as to lengthen the statutory period in which plaintiffs could have filed the underlying product liability action. Application of the discovery rule obviously had the potential to make the suit against defendants under the theory of the original complaint timely. We cite some examples of these added allegations.

¶ 14    Plaintiffs alleged that during Jesse's employment with Central Steel & Wire Company, "he was not told by anyone employed by CS&WC, nor did he know or learn from any other source, that he was, or was maybe, being exposed to harmful or potentially harmful fumes, dust or other emissions from the process of burning/cutting steel plate or that such exposures were harmful or potentially harmful to his health, either temporarily or permanently." The following two paragraphs addressed Jesse's history of medical evaluation and treatment, and his inquiries regarding the cause of a condition ultimately diagnosed as Parkinson's disease:

> "11. From approximately 1992 through 1994, Jesse was medically evaluated and treated and he consulted with various physicians at Meyer Medical Group, 10444 South Kedzie Avenue, Chicago, IL 60655, including Drs. Sikand, Myint and McCarthy. In 1992 or 1993, Jesse was experiencing balance problems and moving slower. Jesse developed left-sided weakness and problems with hand dexterity. Jesse saw Dr. Sikand during this time. She observed and remarked that Jesse had a masked expression, and stated to him that in light of my other symptoms, she wanted him to see a neurologist.

> 12. In 1993, Jesse saw various doctors in the Neurology Department at Rush Presbyterian St. Luke's Medical Center in Chicago, including the Chairman of the Department, Dr. Goetz, and Drs. Pappert and Kujawa. The neurologists evaluated him, and told him that he had Parkinson's Disease. Each time Jesse asked one of the neurologists at Rush what caused his condition, they told him they did not know. None of the doctors at Meyer Medical Group, including Drs. Sikand, Myint and McCarthy ever told Jesse the cause of the Parkinson's Disease."

¶ 15    In subsequent paragraphs, the plaintiffs alleged that they fully informed attorneys at the law firm of Spector & Lenz, in 1995, and the Bernstein law firm, in 1999, of "Jesse's work history, medical condition, medical treatment, about Jesse's inability to work, the conditions of the workplace," and specifically of the diagnosis of Parkinson's disease, and asked them to "help them in any way [they] could."

¶ 16    Plaintiffs alleged: "Jesse was first told that his neurological condition diagnosed as Parkinson's Disease was caused by his exposure to manganese fumes and dust while working as a steel cutter/burner at CS & WC when he was evaluated on February 6, 2003 by Dr. Katherine Duvall at the Occupational Health Service Institute at the University of Illinois at Chicago. At that time, Dr. Duvall told Jesse that his Parkinson's disease is more likely than not related to work exposure to manganese while employed at Central Steel and Wire Company. Prior to this time Jesse believed that he contracted Parkinson's disease from natural causes."

¶ 17    Defendants filed a motion to dismiss plaintiffs' amended complaint arguing, *inter alia*, "all claims and causes of action are time-barred by the limitations period imposed by 735 ILCS 5/13-202 and 735 ILCS 214.3." Pertinent to the issues now before this court, defendants noted, in their "Introduction": "Paragraphs 1-3 [of the amended complaint] are identical to those asserted in the original complaint." Defendants argued: "As such, they are improperly re-asserted in the instant pleading." Defendants followed that contention with these assertions:

"Plaintiffs allege they first learned of potential claims against third parties, in addition to Central, sometime in 2004. A lawsuit was filed against these third parties, and was dismissed in September, 2005, for being time barred. It is further alleged that but for the negligence of the Defendants, Plaintiffs would have had a viable action against the third parties as well as against Spector for malpractice. This negligence was purportedly unknown to the Plaintiffs until September 2005 when their claims against the additional third party defendants were dismissed.

As noted previously, Plaintiffs' original complaint for malpractice against the Defendants was dismissed on August 7, 2006. During the hearing of that motion, the Court specifically noted that the Plaintiffs' statute of limitations in the Underlying actions (against his employer and potential third parties), began to run *no later than 1995*, on his last date of employment." (Emphasis in original.)

¶ 18 Defendants, in their introduction, then proceeded to the focal thesis of their motion to dismiss: "Plaintiffs' Amended Complaint still fails to state a cause of action because Plaintiffs can neither show that Spector ever agreed to pursue a personal injury action on their behalf or owed them any duty to do so." A discussion of that contention ensued, culminating in defendants' assertion that "the Plaintiffs can never show that 'but/for' the actions of the Defendants he would have prevailed in any action against 'other' parties, including Spector, or show that any duty would have ever been owed by Spector to file claims other than the social security claim he retained them specifically to perform." Defendants concluded their introduction with this statement: "Alternatively, and as was the case with the prior pleading effort, Plaintiffs' current legal malpractice action must fail because Plaintiffs' ability to recover in the Underlying personal injury action expired prior to the time he retained the Defendants, as was determined by this Court at the hearing of August 7, 2006."

¶ 19 In the argument portion of their motion, defendants first argued that "the scope of the work agreed to between Plaintiff and Spector & Lenz did not rise to anything pertaining to litigation outside of the social security benefits sought by Hernandez as evidenced by Plaintiffs' Affidavit and the retainer agreement with Spector." From that position, defendants concluded: "Defendants did not commit malpractice for not discussing the issue with the Plaintiffs either for there was no malpractice to discuss."

¶ 20 Defendants then proceeded to their second argument: "Plaintiffs' action against Spector & Lenz expired prior to his retention of the defendants." Again, the defendants included a prefatory reiteration: "Initially, this Court has previously ruled on August 7, 2006, that Plaintiffs' cause of action against Defendants for failing to sue Underlying parties potentially involved in his accident could not stand because Plaintiff's time to sue the Underlying parties expired before he retained the Defendants' services. Therefore, this Court should dismiss that portion of the Amended Complaint that contains duplicate allegations against Defendants, namely, all assertions of a breach of duty but for the new allegation involving a possible legal malpractice action against Spector."

¶ 21 In their second argument, defendants again used Judge Suriano's finding at the August 7, 2006, hearing. Utilizing Judge Suriano's statements, they argued:

"[B]ased on this court's own ruling, the Plaintiff knew, or should have known, that he had a potential cause of action beginning in 1995. Therefore, not only did his limitations period to sue the Underlying parties expire as of 1997 (before he retained the Defendants), but his time period to sue Spector also lapsed before he retained the Defendants. This is true because based on the Court's own ruling, finding that Plaintiff had notice of a potential injury as of 1995, then he should have been on notice as of 1995 (when he retained Spector), and at least as of 1996 (the last year Plaintiff worked with Spector), that no action had been filed on his behalf asserting any cause of action based on any wrongdoing by any party."

Citing Judge Suriano's statements at the August 7, 2006, hearing, and implicitly acknowledging that the circuit court had not established, via ruling, a *definitive* date when the personal injury statute of limitations began to run, defendants argued: "It remains possible that the limitations period lapsed even sooner than 1995, as evidenced by the Court's own indication that the Plaintiff was on notice 'at the latest in 1995.' "

¶ 22 Defendants concluded their motion with a request for dismissal of plaintiffs amended complaint on the bases that "Plaintiff could never have proven any duty was owed by Spector for the filing of such claims" and, alternatively, "any potential action against the Defendants would have been time barred pursuant to 735 ILCS 5/13-202 and 735 ILCS 214.3 because Plaintiffs' cause of action against any Underlying party, including Spector, lapsed as early as 1997 or 1998."

¶ 23 The hearing on defendants' motion to dismiss plaintiff's amended complaint took place on March 28, 2007, before Judge Elizabeth Budzinski. At one point in the hearing, Judge Budzinski cut off a discussion of the statute of limitations in an effort to focus on the issue of duty, stating: "[T]he only allegations that I'm dealing with—I'm not reconsidering Judge Suriano's ruling. That's not on the table." The court advised counsel the "only allegation" in the complaint she was dealing with was whether "the Bernstein firm owed a duty to advise of third-party claims," and, in turn, "whether or not Spector & Lenz should have advised them of potential medical malpractice or any other third-party claims."

¶ 24 After further discussion focusing, again, on the scope of the Spector law firm's duty to Jesse, the judge, without presaging any ruling whatsoever, abruptly stated: "We can go off the record." Subsequent parenthetical notations in the transcript indicate that a discussion was then had off the record, and that the court would reconvene at 2 p.m. There is no transcript of any further proceedings on that date in the record on appeal. The court reporter's certification indicates her transcript "contains all the proceedings had at the said hearing on the motion." It is not clear what, if anything, took place later on that date.

¶ 25 What *is* clear is that a written order resulted, dated March 28, 2007, entered by Judge Budzinski, denying, in its entirety, defendants' motion to dismiss. The pertinent portion of the court's order simply states: "Defendant's Motion to Dismiss the Amended Complaint is denied[.]" This order appears to have been prepared by defendants' own attorney.

¶ 26 The case continued, with plaintiffs' amended complaint intact, and without any effort on the part of defendants to clarify the written orders of the circuit court if, in fact, defendants believed those orders did not accurately reflect the judicial pronouncements of the court to

that point in the proceedings.

¶ 27        Defendants subsequently filed an answer to plaintiffs' amended complaint. Their ambivalence regarding the finality, and binding nature, of any pronouncements made by Judge Suriano on August 7, 2006, is reflected in their responses to certain paragraphs of plaintiffs' amended complaint. Their responses to three numbered paragraphs of plaintiffs' amended complaint are identical, except for the cited paragraph number in each:

> "Defendants make no answer with respect to [numbered paragraph] of Plaintiffs' Amended Complaint inasmuch as said allegations were dismissed pursuant to the Order of Judge Suriano dated August 7, 2006. To the extent the allegations contained within this [sub]paragraph are deemed to remain despite the dismissal in the aforesaid Order, Defendants deny the allegations contained therein."

¶ 28        Defendants also raised a number of affirmative defenses. Defendants' fourth affirmative defense reads as follows:

> "The state of scientific and medical knowledge at the time of the alleged conduct of the defendants cited in Exhibit 1 of Plaintiffs' Complaint [referring to defendants in plaintiffs' product liability complaint and their conduct from 1968 to 1995] and the date of the alleged injury or damage to Jesse Hernandez was not sufficient to apprise the defendants cited in Exhibit 1 of Plaintiffs' Complaint of the dangers and risks allegedly resulting from exposure to the products in question."

¶ 29        An order of record, entered by Judge Marcia Maras on March 17, 2009, indicates that defendants filed a motion for summary judgment, which was heard on that date and continued for ruling to April 3, 2009. Defendants represent in their brief that their motion was "brought on the bases that Spector & Lenz owed no duty to advise plaintiffs of potential claims for products liability and/or chemical exposure and that plaintiffs could not prove the merits of their underlying case." The page cited by defendants in the record on appeal does not disclose their motion or the bases relied upon; it is a copy of the aforesaid order. Defendants also represent that the motion was set for ruling on April 7, 2009. Neither page cited—both of which are copies of orders entered on March 17 and April 3, 2009, respectively—indicates that a dispositive ruling was scheduled for April 7, 2009.

¶ 30        The record does substantiate that plaintiffs filed a motion to voluntarily dismiss their case, without prejudice, pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009 (West 2008)), and that plaintiffs' motion was granted via order entered by Judge Marcia Maras on April 14, 2009. In their motion, plaintiffs acknowledged the pendency of defendants' motion for summary judgment, and averred that they had presented sufficient evidence to avoid the entry of summary judgment. They claimed their motion was occasioned by an "issue pertaining to documents produced by Central Steel and Wire during an underlying action." Plaintiffs concluded, "in the interests of justice and to ascertain a complete and accurate record plaintiff seeks to dismiss this case at this time." Judge Maras' dispositive order of April 14, 2009, reads, simply: "This matter is dismissed pursuant to section 5/2-1009 with all applicable costs to be paid upon refiling."

¶ 31        A complaint for legal malpractice was thereafter filed on September 22, 2009, stating that is was "a refiling of case number 05 L 12564."

¶ 32    Defendants moved to dismiss the refiled action pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2008)). Defendants noted that plaintiffs' original complaint for legal malpractice was dismissed by Judge Suriano on August 7, 2006. They then represented to the court that plaintiffs "subsequently filed an Amended Complaint in which the *sole allegation* was that the Bernstein firm was negligent in failing to sue Spector & Lenz." (Emphasis in original.) They observed that the refiled complaint included both allegations of negligence for failing to sue or advise suit against the Spector law firm, and allegations supporting the "claim" against defendants for failing to sue or advise suit against the product liability defendants, a "claim" which defendants submit was dismissed by Judge Suriano.

¶ 33    Defendants argued that the refiled complaint should be dismissed, with prejudice, pursuant to section 2-619(4) of the Code on the basis that the entire action is barred by the doctrine of *res judicata* and the prohibition against claim-splitting espoused by this court in *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996). Defendants recognized that contention depended upon the entry of a *final* judgment by Judge Suriano on August 7, 2006.

¶ 34    Defendants, however, also argued an "alternative" position, contending, if there was no final adjudication on that date:

> "[T]he dismissed allegations, that the Bernstein firm failed to advise Mr. Hernandez that he had a potential chemical exposure case, should be stricken in accordance with § 5/2-615 for the same reason that Judge Suriano dismissed the original Complaint, namely that any chemical exposure case was barred by the statute of limitations when the Bernstein firm was retained to prosecute a Workers Compensation claim until 1999 given that Mr. Hernandez's last day of employment at Central Steel & Wire was in 1995."

¶ 35    For their *res judicata* argument, the defendants relied substantially upon this court's decisions in *Rein* and *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008).

¶ 36    On March 24, 2010, the matter was heard before Judge Jeffrey Lawrence. Judge Lawrence noted the nature of the allegations in plaintiffs' first legal malpractice complaint and Judge Suriano's dismissal thereof. He observed that plaintiffs then filed an amended complaint in which they "reasserted" the original "claims" and "made an additional claim" involving the Spector firm. The judge found "those two claims do not rise out of the same operative set of facts." Judge Lawrence acknowledged plaintiffs' argument that Judge Suriano's order should not be considered a final adjudication on the merits because it did not state that the initial complaint was dismissed with prejudice, and he indicated he was "on the point of agreeing" until he read the appellate court's opinion in *Matejczyk v. City of Chicago*, 397 Ill. App. 3d 1 (2009), wherein, he believed, "the identical argument was raised." Judge Lawrence ultimately determined that he was "constrained to apply the *res judicata* rule of *Hudson*," that the line of cases represented by *Rein*, *Hudson*, and *Matejczyk* "was intended to prohibit this type of claim splitting and reasserting the same claim in two separate actions."

¶ 37    The appellate court reversed and remanded, framing the issue here as "whether the August Order bars the instant litigation," and concluding: "It does not." 2011 IL App (1st)

102646, ¶ 6. The court rejected the defendant's contention that the August order was final because, allegedly, it "disposed of one of plaintiffs' two grounds for recovery," *i.e.*, " 'that the Bernstein defendants were negligent in failing to advise plaintiffs with respect to suing Spector & Lenz for failing to bring a products liability or chemical exposure case.' " 2011 IL App (1st) 102646, ¶ 7. In the view of the appellate court: "Plaintiffs have alleged only a single theory of recovery: legal negligence." *Id*. The appellate court explained: "The trial court's order did not alter plaintiffs' theory of recovery—negligence. It simply allowed them to plead new facts in support of that claim." *Id*. The court quoted from *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887 (2009):

> " 'This court has held that the dismissal of certain allegations under a single theory of recovery does not terminate litigation between the parties on the merits or dispose of the rights of the parties on a separate branch of the controversy. [Citation.] Rather, the dismissal of certain allegations under one theory of recovery merely determines which allegations under that theory are allowed to remain.' " *Id*. (quoting *Piagentini*, 387 Ill. App. 3d at 894).

The appellate court, in this case, found it of no consequence that "the factual allegations here appeared in two separate pleadings, as opposed to a single complaint, *** since the allegations were made to advance a single theory of recovery: negligence based on defendants' alleged failure 'to inform [plaintiffs] of all potential claims and causes of action they possessed or which might arise from the injuries in question.' As the August Order barred only certain allegations in support of that theory, as opposed to the entire negligence claim, the August Order was not final." *Id.*

¶ 38 The appellate court purported to distinguish *Matejczyk* on the basis that the plaintiffs here did not file a multicount complaint, as did plaintiff in *Matejczyk*, where one count was dismissed "with Matejczyk being granted leave to refile count II." *Id.* ¶ 8 (quoting *Matejczyk*, 397 Ill. App. 3d at 2). This appellate panel found it significant that plaintiffs "filed a single-count complaint that the trial court dismissed with leave to replead." *Id.* The appellate court stated that an " 'order dismissing a complaint but granting leave to replead is not a final order for purposes of *res judicata* until the trial court enters an order dismissing the suit with prejudice.' " *Id*. ¶ 9 (quoting *Williams v. Ingalls Memorial Hospital*, 408 Ill. App. 3d 360, 364 (2011), and citing *Piagentini*, 387 Ill. App. 3d at 894). The appellate court found *Rein* and *Hudson* inapposite as the rendition of a "final" order was essential in the analysis of each. 2011 IL App (1st) 102646, ¶ 10.

¶ 39                                              ANALYSIS

¶ 40 Defendants, as the parties invoking the application of *res judicata*, and as the litigants responsible for obtaining rulings on their motions in the circuit court, bear a substantial burden in this case.

¶ 41 The burden of showing that *res judicata* applies is on the party invoking the doctrine. *People ex rel. Scott v. Chicago Park District*, 66 Ill. 2d 65, 68 (1976); *Taylor v. Police Board*, 2011 IL App (1st) 101156, ¶ 19. A critical component in that showing is a final adjudication. *Hudson*, 228 Ill. 2d at 470; *Rein*, 172 Ill. 2d at 335. As we have often observed,

-10-

a movant has the responsibility to obtain a ruling on his motion if he is to avoid forfeiture on appeal. *People v. Urdiales*, 225 Ill. 2d 354, 425 (2007). In this context, where the *nature* of the ruling may be determinative, we may qualify that proposition further: a movant has the responsibility to obtain a *definitive* ruling.

¶ 42    Moreover, where, as here, multiple judges and rulings are involved, we are mindful of precedent recognizing the circuit court's inherent power to review, modify, or vacate interlocutory orders while the court retains jurisdiction over the entire controversy. For example, this court has repeatedly held that the circuit court has the inherent power to modify or vacate an interlocutory order granting summary judgment any time before final judgment. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 213-14 (1988). "In a variety of contexts, this court has stated that an interlocutory order may be reviewed, modified or vacated at any time before final judgment, and it is of no consequence that the original order was entered by another circuit judge." *Balciunas v. Duff*, 94 Ill. 2d 176, 185 (1983). See also *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 121 (1978) (while the circuit court retains jurisdiction over the entire controversy, and where there is no evidence of "judge shopping," a court is not bound by the order of a previous judge and has the power to correct orders it considers to be erroneous); *Shaw v. Dorris*, 290 Ill. 196, 204 (1919) ("At any time before the entering of *** final judgment the whole record is before the court, and an erroneous ruling theretofore made may be set aside and the error corrected.").

¶ 43    Application of the foregoing principles requires affirmance of the judgment of the appellate court. Irrespective of whether or not a single "claim" is involved in this case, as the appellate court determined, for purposes of *res judicata*, we do not interpret the cursory oral pronouncements of Judges Suriano and Budzinski as definitively and finally foreclosing the plaintiffs' right to attempt amendment of their complaint in such a way as to plead additional facts bearing upon application of the discovery rule to their underlying product liability claim—which in turn could affect the viability of legal malpractice actions. The state of the pleadings when the plaintiffs voluntarily dismissed their action supports that assessment, as the "claim" or "theory" of plaintiffs' original legal malpractice complaint stood—neither stricken nor dismissed—as part of plaintiffs' amended complaint at that time. Nor do we believe that the actions, and inaction, of the defendants in the circuit court merit the application of *res judicata* under these circumstances.

¶ 44    First, we look at the oral pronouncements of Judges Suriano and Budzinski, and the resulting written orders.

¶ 45    Judge Suriano indicated he was dismissing the original complaint, that contained certain allegations, pursuant to defendants' motion to dismiss, which was obviously filed after the complaint. When counsel for plaintiffs asked to "add"—not substitute—allegations supporting a theory of liability based upon the failure of defendants to sue, or advise suit against, the Spector law firm, Suriano said, "I'll allow him to bring that." Despite Judge Suriano's finding—based upon the factual allegations *then* before him—that the statute of limitations began to run in 1995, nothing he said on August 7, 2006, indicates that further amendment on that score was precluded, or that he would not, or another judge *could* not, revisit the matter later if presented with additional factual allegations impacting the time at which the statute of limitations could be deemed to have commenced. It appears that

-11-

plaintiffs attempted to present those facts in their amended complaint.

¶ 46    The resulting written order Judge Suriano signed simply states that plaintiffs were given 30 days to file "an amended complaint." No restrictions or limitations were placed on the content of that complaint; there is no language that suggests a final ruling was rendered or that the case, or any part thereof, was dismissed with prejudice.

¶ 47    A final judgment has been defined as "a determination by the court on the issues presented by the pleadings which ascertains and fixes *absolutely and finally* the rights of the parties in the lawsuit." (Emphasis added.) *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982). There is no indication in Judge Suriano's oral pronouncement or written order that anything was "absolutely and finally" settled when he granted defendants' motion to dismiss, but gave plaintiffs leave to file "an amended complaint." It appears there was "no adjudication upon the merits" for purposes of Supreme Court Rule 273 (Ill. S. Ct. R. 273) because, as provided therein, "the order of dismissal" in this case "otherwise specifies," granting plaintiffs leave to file an amended complaint—which plaintiffs promptly did in the original malpractice action.

¶ 48    The statement of Judge Budzinski, upon which defendants rely, is even less definitive, when placed in its proper context, than the pronouncement of Judge Suriano. At the time she made the brief remark, upon which defendants' claim of *res judicata* so heavily depends, defendants' counsel was attempting to argue the applicability of Judge Suriano's 1995 date in service of a contention that, "if [Jesse] had a cause of action that started to run in '95, it would have lapsed in '97." Judge Budzinski appears to have cut off a discussion of the statute of limitations at that point, stating: "[T]he only allegation that I'm dealing with—I'm not reconsidering Judge Suriano's ruling. That's not on the table." The judge then made clear that the "only allegation" in the complaint she was focusing on, at that point in the hearing, was the issue of duty—that of the defendants herein, and that of the Spector law firm. Thus, one could reasonably interpret Judge Budzinski's brief remark as intended to direct and control the discussion in the course of an ongoing hearing in which "many layers of things [were] going on." It is not necessarily—or even reasonably—interpreted as a comment on the character of Judge Suriano's ruling or the finality she would accord it.

¶ 49    In the latter respect, we compare the allegations and requests for relief in defendants' motion to dismiss plaintiffs' amended complaint for legal malpractice with the relief accorded them in Judge Budzinski's written order of March 28, 2007. In their motion to dismiss the amended complaint, defendants repeatedly insisted that the theory and allegations from plaintiffs' original malpractice complaint were "improperly re-asserted in the instant pleading," that "Plaintiffs' ability to recover in the Underlying personal injury action expired prior to the time he retained the Defendants, as determined by this Court at the hearing of August 7, 2006," and that, "[a]s a result of being on notice no later than 1995 of his potential claim, all of the Plaintiffs' potential claims, including any claim against Spector, would have expired by the time Plaintiffs first retained Defendants in 1999." Defendants made the following specific request for relief, directed at excising plaintiffs' allegations from their original malpractice complaint, which defendants argued were "improperly re-asserted in" their amended complaint: "Therefore, this Court should dismiss that portion of the Amended Complaint that contains duplicate allegations against Defendants, namely, all assertions of

a breach of duty but for the new allegation involving a possible legal malpractice action against Spector."

¶ 50    That request was not specifically addressed by Judge Budzinski in the course of the hearing on the motion to dismiss, and it most certainly was not in the resulting written order. To the contrary, Judge Budzinski's written order stated that defendants' motion to dismiss the amended complaint was "denied"—period—and defendants were given 28 days to file a responsive pleading. No paragraphs of plaintiffs' amended complaint were stricken; nothing was dismissed. Judge Budzinski left plaintiffs' amended complaint intact, and the case went on.

¶ 51    Although defendants would have us believe that Judge Suriano's August 7, 2006, ruling was undoubtedly a final adjudication, their own actions, from the filing of their motion to dismiss plaintiffs' amended complaint, to their filing of a responsive pleading after their motion was denied, evince their lack of conviction in the position they now espouse. As noted previously, in their answer to the amended complaint, they continued to argue the finality of Judge Suriano's ruling—implicitly acknowledging it was *not* a matter finally decided—and conceded the uncertainty of the situation by stating: "To the extent the allegations contained within this paragraph are deemed to remain despite the dismissal in the aforesaid Order, Defendants deny the allegations contained therein."

¶ 52    We believe a party claiming *res judicata*—as the party bearing the burden of showing that *res judicata* applies—has a duty to clarify the record so as to *clearly* demonstrate his entitlement to the doctrine's application. Defendants have failed to carry their burden.

¶ 53    We acknowledge defendants' contention that, "[t]o the extent that the written order raises a question regarding Judge Budzinski's ruling, her oral pronouncements control." We perceive no such question: defendants' motion to dismiss plaintiffs' amended complaint was explicit in what it alleged and in the relief it sought, and it was denied in its entirety. Defendants cannot look to oral pronouncements to explain otherwise unambiguous written orders where the oral pronouncements themselves are, *at best*, ambiguous indicators of the court's intent.

¶ 54    In sum, we find that the defendants, as the parties seeking to invoke the doctrine of *res judicata*, have not borne their burden of proving a final judgment was entered for purposes of the doctrine's application. Consequently, the judgment of the appellate court is affirmed, albeit on different reasoning (see *People v. McDonough*, 239 Ill. 2d 260, 275 (2010) (this court is not bound by the appellate court's reasoning and may affirm on any basis presented in the record)), and this cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 55    Affirmed and remanded.