2023 IL App (2d) 220334
No. 2-22-0334
Opinion filed July 24, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-3790 |
| AMITTIE G. BROWN, | ) ) ) | Honorable D. Christopher Lombardo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Amittie G. Brown, has filed four appeals in this court: (1) a direct appeal
(*People v. Brown*, 2014 IL App (2d) 120849-U) (*Brown I*), (2) an appeal from the denial of a
pleading seeking to file a postconviction petition[1] (*Brown II*), (3) an appeal from an order granting
the State's motion to dismiss as untimely defendant's postconviction petition at the second stage
of postconviction proceedings (*People v. Brown*, 2022 IL App (2d) 200721-U) (*Brown III*), and
(4) this current appeal from an order denying defendant leave to file a successive postconviction
petition. Defendant now argues for the first time that the trial court's oral ruling in *Brown III*,

_____

[1] Defendant, in fact, attached no postconviction petition to this pleading.

granting the State's motion to dismiss his initial petition, was not a final order. Accordingly, defendant argues, we must vacate the trial court's order denying him leave to file his successive postconviction petition and remand this cause for the trial court to file its written ruling granting the State's motion to dismiss his initial petition in *Brown III*. We reject defendant's argument and affirm.

¶ 2                                    I. BACKGROUND

¶ 3     The facts of this case are well known to the parties and this court. Accordingly, we recite here only those facts necessary to resolve the issue raised.

¶ 4     In October 2007, defendant was charged by indictment with 15 counts of first degree murder. All the counts involved the same 66-year-old victim. Defendant was 20 years old when the murder occurred.

¶ 5     Over four years after defendant was charged, a jury found defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)). The jury also found that the victim was over 60 years old and that the victim's death was the result of exceptionally brutal and heinous behavior indicative of wanton cruelty (*id.* § 9-1(b)(16)). Defendant was sentenced to 55 years' imprisonment. He appealed, and we affirmed his conviction and sentence (*Brown I*).

¶ 6     Well over one year after *Brown I*, defendant filed a "Petition for Leave to File a Late Post Conviction Petition." No postconviction petition was attached to this pleading. The trial court denied defendant's pleading, and defendant moved the court to reconsider. The court denied that motion, noting that, without a postconviction petition, it had nothing before it to consider. Defendant moved to file a late notice of appeal in this court, and we granted him leave to do so. On defendant's motion, that appeal was dismissed (*Brown II*).

¶ 7    In April 2016, defendant petitioned for postconviction relief. Recognizing that his petition was untimely filed, he argued that the late filing was due to his diminished mental capacity, not his culpable negligence. The trial court advanced defendant's petition to the second stage of postconviction proceedings and appointed counsel to represent him.

¶ 8    In October 2019, counsel filed a supplemental petition and a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel argued, among other things, that

> "[defendant's] 55-year sentence [was] an unconstitutional *de facto* life sentence in violation of the cruel and unusual punishment clause of the 8th Amendment of the Constitution of the United States [(U.S. Const., amend. VIII)] and the proportionate penalties clause of Article [1] of Section [11] of the Constitution of the State of Illinois [(Ill. Const. 1970 Art. 1, § 11)]."

The State moved to dismiss, arguing, among other things, that defendant's petition was untimely.

¶ 9    At a hearing held on November 23, 2020, where defendant was present via video, the trial court granted the State's motion to dismiss. In doing so, the court asserted that it "w[ould] be filing a written order detailing its ruling including all of the cases the [c]ourt relied upon and its reasoning." The court continued that, "[w]ith regards to the State's motion to dismiss surrounding the issue of timeliness, it [was] undisputed that the post[-]conviction petition was late." The court found that "[t]he real issue *** with regards to timeliness [was] the culpable negligence analysis[.]" On that issue, the court determined that "the delay [was] not excused due to a lack of culpable negligence on the part of the [d]efendant." However, the court noted, "one of the issues raised was regarding the sentencing in an alleged 8th Amendment violation due to [d]efendant's age and based upon the *Miller* [*v. Alabama*, 567 U.S. 460 (2012)] factors[.]" The court found such an argument unavailing, as defendant was 20 when he committed the murder and the *Miller* line

of cases created the "bright-line rule" that the eighth-amendment protections announced in *Miller* applied only to offenders under 18. Thus, the court determined that, "even if th[e] claim were to survive the timeline [challenge,] *** it d[id] not survive the analysis set out in the case law in *Miller* [and] its progeny here in Illinois under the 8th Amendment to go beyond the [s]econd [s]tage." The court continued that, "[a]gain, [it] ha[d] [a] lot more detail with regards to interpretation and its reasoning in the [written] order" and that "[t]he written order w[ould] be served on all the parties including service to the [d]efendant."

¶ 10    The court then advised defendant that he had the right to appeal the court's decision. The court continued:

> "And to preserve the right of appeal that you must file a notice of appeal here in the trial court with the Clerk of the Circuit [Court] within 30 days from the date that the order dismissing the post-conviction petition was entered, and I want to make sure you understand those are your rights to appeal.
>
> I think I will have that order on file by tomorrow. *** But just for the final touches [the written order] will either be filed later today or tomorrow, and you have 30 days to file a notice of appeal."

¶ 11    Immediately thereafter, the following discussion ensued:

> "MR. FACKLAM [(ASSISTANT PUBLIC DEFENDER)]: Judge, would you allow us to do that now? Obviously we know.
>
> THE COURT: I will.
>
> MR. FACKLAM: To be supplemented with the written order tomorrow, but I'd spoke[n] to [defendant] previously and we discussed if this was denied, the State's motion was granted, he would want to appeal.

Just due to the nature [of things] I don't think it is necessary to file a motion to reconsider so we would just ask the notice of appeal be filed today. We ask for [the] Appellate Public Defender obviously to be appointed and for the transcript of the proceedings [to] be prepared.

THE COURT: Absolutely.

\*\*\*

Yes, I will—the [c]ourt's ruling—this is only a matter of the [written] order just contains the case law in a much more detailed version of what the [c]ourt's ruling is today so I will absolutely give him leave to file his notice of appeal today."

¶ 12 The minute order reflected that "no order [was] entered" and "clerk to prepare, file notice of appeal." The circuit court clerk filed a notice of appeal on defendant's behalf that same day. However, no written order was ever filed granting the State's motion to dismiss.

¶ 13 Defendant appealed from the oral ruling granting the State's motion to dismiss, citing Illinois Supreme Court Rule 651(a) (eff. July 1, 2017) as the jurisdictional basis for his appeal. He also noted that, "[a]lthough the circuit court referenced a written order that it had prepared granting the State's motion to dismiss, no such order [was] contained in the common law record," and the Lake County Circuit Clerk's Office confirmed that no written order had been filed with that office. Defendant argued on appeal that the delay in filing his petition was not due to his own culpable negligence. We disagreed and affirmed the dismissal (*Brown III*).

¶ 14 Two months after *Brown III*, defendant moved for leave to file a successive postconviction petition. Defendant argued that a

"*de facto* life sentence of 55-years in prison imposed by the trial court without any consideration of [defendant's] youth or rehabilitative potential for an offense that he was

charged with when he was only 20-years old[ ] [was] unconstitutional under the Proportionate Penalties Clause of the Illinois Constitution[ ] as[ ]applied to him."

¶ 15    The trial court denied defendant leave to file a successive postconviction petition. In doing so, the court recognized that defendant "restate[d] just one position previously argued and dismissed, that his sentence of 55 years is unconstitutional and violative of the Proportionate Penalties Clause of the Illinois Constitution, relying again on *Miller* \*\*\*, *People v. House*, 2019 IL App (1st) 110580[-B,] and *People v. Buffer*, 2019 IL 122327." The court found that "[defendant's] youth was known to all concerned, was raised at the sentencing hearing before the trial court, [and] was not raised in his direct appeal but raised in his initial postconviction petition[,] which was dismissed on grounds of untimeliness." Moreover, the court observed that "[defendant] was not under the age of 18 at the time of the offense, did not receive a mandatory or discretionary life sentence, but was sentenced within the statutory range of sentences possible and his request to apply his circumstances nonetheless is not supported by the facts or precedent."

¶ 16    Defendant timely appeals the trial court's denial of leave to file a successive postconviction petition.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant argues for the first time that we must remand this cause for the trial court to enter its written order granting the State's motion to dismiss defendant's petition in *Brown III*. We review this issue *de novo*. *People v. King*, 2012 IL App (2d) 100801, ¶ 5 (noting that *de novo* review applies when appellate court does not need to defer to trial court's reasoning).

¶ 19    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides an avenue for incarcerated defendants to collaterally attack their convictions or sentences if they were denied a constitutional right during trial or sentencing. *People v. Romero*, 2015 IL App (1st)

140205, ¶ 25; see *People v. Smith*, 2014 IL 115946, ¶ 22 ("A proceeding under the Act is a collateral attack on the judgment of conviction." (Internal quotation marks omitted.)). Only one petition may be filed under the Act without leave of court. *People v. Sanders*, 2016 IL 118123, ¶ 24; 725 ILCS 5/122-1(f) (West 2020). "[T]he rules barring successive petitions will be relaxed only when fundamental fairness so requires." (Internal quotation marks omitted.) *People v. Taliani*, 2021 IL 125891, ¶ 54. Our supreme court has "recognized only two exceptions where 'fundamental fairness' compels the bar against successive petitions to be lifted." *Id.* ¶ 55. "The first is the 'cause and prejudice' exception, which has been codified in the Act [(see 725 ILCS 5/122-1(f) (West 2020))]." *Id.* ¶ 55. "The second is the fundamental miscarriage of justice exception, which requires a [defendant] to make a persuasive showing of actual innocence. " (Internal quotation marks omitted.) *Id.*

¶ 20    Defendant's claim on appeal here does not concern the correctness of the trial court's order denying him leave to file a successive postconviction petition. Rather, defendant's argument concerns the fact that the trial court never filed a written order in *Brown III*. The State contends that defendant has waived the argument because he could have raised it before but did not. defendant's argument is forfeited. See, *e.g.*, *People v. Pursley*, 2022 IL App (2d) 210558, ¶ 68 (arguments that could have been raised in trial court, but were not, are forfeited on appeal); see also *People v. Jones*, 211 Ill. 2d 140, 148 (2004) (in appeal from ruling on postconviction petition, question is whether liberally construed allegations raised in petition warrant relief under the Act).

¶ 21    The State is correct in that, "[w]hen a defendant files a successive postconviction petition, section 122-3 of the Act [(725 ILCS 5/122-3 (West 2020))] mandates that any claim not raised in the original or amended petition is forfeited." *People v. Daniel*, 379 Ill. App. 3d 748, 749-50 (2008). As noted above, such forfeiture is excused only if the defendant establishes his actual

innocence or satisfies the cause and prejudice test (see *Taliani*, 2021 IL 125891, ¶ 55), neither of which defendant has done. Defendant argues that, irrespective of these rules, he may raise for the first time in this appeal the trial court's failure to enter a written order in *Brown III*, because (1) "there has never actually been a final ruling on his original petition" in *Brown III*, as the order the trial court entered constituted "an incomplete oral ruling," and, thus, (2) our decision in *Brown III* "is void because this Court did not have jurisdiction to rule [when] no final judgment had been made" in the trial court before defendant appealed in *Brown III*.

¶ 22    Jurisdiction is a fundamental prerequisite to a valid proceeding. See *People v. Davis*, 156 Ill. 2d 149, 155, 157 (1993). Jurisdiction is commonly understood to consist of two elements: (1) personal jurisdiction and (2) subject-matter jurisdiction. *People v. Castleberry*, 2015 IL 116916, ¶ 12. "Personal jurisdiction refers to [the] power of a court to bind the parties to its judgments [citations] ***." *First National Bank of Chicago v. Boelcskevy*, 126 Ill. App. 3d 271, 276 (1984). A court attains personal jurisdiction in criminal cases when the defendant appears before the trial court. *People v. Speight*, 72 Ill. App. 3d 203, 208 (1979). Subject-matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).

¶ 23    Presumably, defendant takes issue with our subject-matter jurisdiction in *Brown III*. "Article VI, section 6, of the Illinois Constitution [(Ill. Const. 1970, art. VI, § 6)] confers on the appellate court jurisdiction to hear appeals from all final judgments entered by the [trial] court." *People v. Shinaul*, 2017 IL 120162, ¶ 10. In postconviction proceedings, we have subject-matter jurisdiction over only final judgments. See *People v. Garcia*, 2015 IL App (1st) 131180, ¶ 67.

¶ 24    "It is well settled that a 'final judgment' is a determination by the [trial] court on the issues presented by the pleadings 'which ascertains and fixes absolutely and finally the rights of the parties in the lawsuit.' " *Shinaul*, 2017 IL 120162, ¶ 10 (quoting *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 47). "In other words, a judgment or order is considered final and appealable if it determines the litigation on the merits such that the only thing remaining is to proceed with execution of judgment." *Id.* "Accordingly, only an order which leaves the cause still pending and undecided is not a final order for purposes of appeal." *Id.*

¶ 25    Here, the trial court in *Brown III* orally granted the State's motion to dismiss defendant's petition as untimely. That was a final order, as it disposed of defendant's petition in its entirety and left nothing still pending and undecided in the trial court. See *People v. Joyce*, 1 Ill. 2d 225, 226-27 (1953) (order in postconviction proceeding granting petition, vacating conviction, and ordering new trial was final order, even though order did not dispose of criminal proceedings against the defendant).

¶ 26    When the notice of appeal was filed on defendant's behalf in *Brown III*, our jurisdiction attached *instanter*. See *People v. Bounds*, 182 Ill. 2d 1, 3 (1998) ("When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court."). Although not dispositive, defendant recognized as much in *Brown III*, when he noted that no written order was ever filed and asserted that the appeal there was nonetheless proper under Rule 651(a), which provides that "[a]n appeal from a final judgment of the circuit court in any postconviction proceeding shall lie to the Appellate Court in the district in which the circuit court is located."[2]  Ill. S. Ct. R. 651(a) (eff. July 1, 2017).

---

[2] An appellate court may take judicial notice of its own records. See *Weimann v. County*

¶ 27 Relying on *King*, defendant argues that the order granting the State's motion to dismiss in *Brown III* was not final, because the trial court indicated that a written order would be filed later, after defendant filed his notice of appeal. In *King*, the defendant petitioned *pro se* for postconviction relief. *King*, 2012 IL App (2d) 100801, ¶ 3. The trial court orally dismissed the petition within the required 90-day period[3] (see 725 ILCS 5/122-2.1(a) (West 2010)), noting that it would file a written order and mail it to the defendant within the required 10-day period (see *id.* § 122-2.1(a)(2)). *King*, 2012 IL App (2d) 100801, ¶ 3. More than 90 days passed before the trial court entered its written order dismissing the petition. *Id.* ¶ 4. The defendant moved the court to reconsider, arguing that his petition had to be advanced to the second stage of postconviction proceedings, as the written order dismissing his petition was entered after the 90-day period lapsed. *Id.* The trial court denied the motion, and the defendant appealed. *Id.*

¶ 28 We reversed and remanded the cause for second-stage postconviction proceedings. *Id.* ¶ 14. In doing so, we examined Illinois Supreme Court Rule 272 (eff. Nov. 1, 1990), which in relevant part provides:

> " 'If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed

---

*of Kane*, 150 Ill. App. 3d 962, 969 (1986) ("[A]n appellate court may, at any time, take judicial notice of records of proceedings in its own or other courts which contain easily verifiable, though not generally known, facts as an aid in the efficient disposition of litigation." (Internal quotation marks omitted.)).

[3] Evidently, the defendant was not present at the time.

written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record.' [Citation.]" *King*, 2012 IL App (2d) 100801, ¶ 9.[4] Pursuant to Rule 272, which applies in criminal as well as civil cases, we determined that, "even though a written order was not 'required,' the [trial] court took it upon itself to file a written order." *Id.* ¶ 11. Thus, "[b]ecause the court indicated that a written order would be filed, the date the written order was filed controls" for the purpose of determining when the final judgment summarily dismissing the defendant's postconviction petition was entered. *Id.* In reaching that conclusion, we observed "that a contrary ruling would pose certain practical problems." *Id.* ¶ 13. Specifically, "[a]llowing an *ex parte* oral dismissal to control in the situation that exists here [(*i.e.*, when the defendant was neither represented by counsel nor aware of the oral dismissal)] could threaten [the] defendant's right to appeal." *Id.* That is, "if the oral order controlled, the 30 days a defendant has to appeal[ ] *** would begin to run at that time," before the defendant was aware of the ruling and that the appeal period commenced. *Id.*

¶ 29 We do not find *King* persuasive here. *King* determined when a final judgment was entered where a defendant's *pro se* postconviction petition was summarily dismissed at the first stage of postconviction proceedings. See 725 ILCS 5/122-2.1(a)(2) (West 2020). In *Brown III*, however, the procedural context differed, as the trial court had advanced the petition to the second stage of review and appointed counsel for defendant. See *People v. Tate*, 2012 IL 112214, ¶ 10 (outlining

---

[4] Since *King*, Rule 272 was amended to address electronically preparing, presenting, and signing orders. See Ill. S. Ct. R. 272 (eff. Jan. 1, 2018). That amendment is not relevant to issues in this appeal.

stages in postconviction proceedings); compare 725 ILCS 5/122-2.1(a)(2) (West 2020) (trial court must examine a first-stage petition within 90 days, and, if court determines that the petition is frivolous or patently without merit, it shall order dismissal and serve notice of dismissal on the defendant within 10 days), with 725 ILCS 5/122-5 (West 2020) (setting no time within which trial court must rule on petition that has advanced to second stage). Setting when a final judgment is entered in cases like *King* is important precisely because of the practical problems we recognized in that case, which are not present here. Unlike the defendant in *King*, defendant was aware of the court's order granting the State's motion to dismiss in *Brown III*, as he was present via video when the trial court orally granted that motion and he knew that a notice of appeal was filed on his behalf that same day, before any written order was entered.

¶ 30    Aside from these procedural differences, *King* is inapplicable for at least one other reason. Nowhere in *King* did we suggest that the trial court's failure to file a timely written order somehow made the oral judgment void for lack of jurisdiction. Indeed, if voidness were an issue, we would not have acquired jurisdiction in *King* to order the trial court to advance the defendant's petition to the second stage of postconviction proceedings. See *People v. Flowers*, 208 Ill. 2d 291, 308 (2003) ("Absent jurisdiction, an order directed at the void judgment would itself be void and of no effect.").

¶ 31    Supporting our position that the final judgment in *Brown III* was entered when the trial court orally granted the State's motion to dismiss is *People v. Perez*, 2014 IL 115927. There, only the trial court was present when it signed an order summarily dismissing the defendant's *pro se* postconviction petition on the ninetieth day after the defendant filed it. *Id.* ¶ 4. On the ninety-first day after the petition was filed, the clerk stamped and filed the order. *Id.* ¶¶ 4-5. In finding that the trial court's order was untimely filed, the supreme court intimated that it would have reached a

different result if the order had not concerned the first-stage dismissal of a petition and was entered in open court. *Id.* ¶¶ 23, 29. Here, such a different result is warranted precisely because the order granting the State's motion to dismiss did not concern a first-stage dismissal and, perhaps more importantly, defendant was present in open court when the State's motion was granted and a notice of appeal was filed on defendant's behalf.

¶ 32    Defendant's argument that no final judgment was entered because the trial court did not specifically address his proportionate-penalties claim in its oral ruling in *Brown III* is a nonstarter for at least two reasons. First, the trial court made clear in its oral ruling in *Brown III* that defendant's petition was untimely and that defendant failed to establish any excuse for the delay in filing the petition. Second, defendant's proportionate-penalties argument is not viable and never was. Putting aside the fact that "*Miller* does not directly apply to young adults," like defendant here, "*Miller* [also] does not present new proportionate[-]penalties clause principles with respect to discretionary sentencing of young adult offenders." (Internal quotation marks omitted.) *People v. Moore*, 2023 IL 126461, ¶¶ 40, 42. Pursuant to the clear language in *Moore*, defendant's proportionate-penalties argument is as unviable now as it was in *Brown III*.

¶ 33    Defendant also argues that the stated purpose of Rule 272 dictates that no final judgment was entered in *Brown III*. The Committee Comments to Rule 272 state that the rule's purpose is "to remove any doubt as to the date a judgment is entered." Ill. S. Ct. R. 272, Committee Comments (rev. Oct. 25, 1990). That purpose has not been frustrated here. Until the present appeal, neither defendant nor the State expressed any doubt about when the final judgment was entered.

¶ 34    Considering the above, we conclude that a final judgment for determining appellate jurisdiction may differ from a final judgment under Rule 272. Although we believe that, under most circumstances, a final judgment for appellate jurisdiction and for purposes of Rule 272 will

be one and the same, this case illustrates a situation where they are not. That is, here, irrespective of the trial court's promise in *Brown III* that a written order would be forthcoming, the court entered a final judgment for purposes of appellate jurisdiction when (1) the court made an oral ruling granting the State's motion to dismiss in the presence of defendant and defense counsel, (2) that oral ruling left nothing pending in the trial court, and, (3) at defendant's urging, a notice of appeal was filed on his behalf the same day the State's motion to dismiss was granted, with defendant's full knowledge that the written order had not yet been filed. Once that notice of appeal was filed, our jurisdiction attached *instanter*.

¶ 35   Our conclusion that, for purposes of appellate jurisdiction, a final judgment was entered in the trial court in *Brown III* is fatal to defendant's current appeal. As noted, defendant claims that he may attack our decision in *Brown III* because it is void for lack of jurisdiction. Because we had jurisdiction over the appeal in *Brown III*, our decision in *Brown III* was not void for lack of jurisdiction. Thus, because our decision in *Brown III* was not void, the forfeiture doctrine applies and defendant may not attack the *Brown III* decision now. See *People v. Thompson*, 2015 IL 118151, ¶ 31 (only void orders may be challenged collaterally at any time).

¶ 36   In reaching our conclusion, we briefly comment on the fact that defendant may have invited the error of which he now complains. Unlike a void order, orders that are not void are subject to the invited-error rule. See *People v. Moore*, 2021 IL App (2d) 200407, ¶ 35 (noting that void orders are not subject to invited-error rule). Under the invited-error rule, a defendant cannot request to proceed in one manner in the trial court and later assert on appeal that the course of action was erroneous. *People v. Carter*, 208 Ill. 2d 309, 319 (2003). "To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation] and encourage defendants to become duplicitous [citation]." (Internal

quotation marks omitted.) *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). For this reason, "a defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *Id.* (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)).

¶ 37 Here, although defendant did not ask the trial court not to file a written order in *Brown III*, and thus the invited-error rule is not on all fours here, the spirit of the rule is implicated. When the trial court indicated that a written order would be forthcoming, defendant, instead of waiting until the written order was entered, asked that a notice of appeal be filed on his behalf that day. In this way, defendant sought to have the trial court enter an order in *Brown III* that he now takes issue with, *i.e.*, that he now claims was not a final judgment.

¶ 38                                      III. CONCLUSION

¶ 39 For the above-stated reasons, we affirm the judgment of the circuit court of Lake County.

¶ 40 Affirmed.

---

*People v. Brown*, **2023 IL App (2d) 220334**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 07-CF-3790; the Hon. Christopher Lombardo, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Andrew Thomas Moore, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---