No. 2-24-0065
Opinion filed April 15, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-401 |
| MICHAEL G. KULPIN, | ) ) ) | Honorable Joseph C. Pedersen, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice Kennedy and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Michael G. Kulpin, appeals from the second-stage dismissal of his postconviction petition, arguing that postconviction counsel performed unreasonably by failing to amend his *pro se* petition to adequately present his claim that his sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) under *Miller v. Alabama*, 567 U.S. 460 (2012). We affirm.

¶ 2                                  I. BACKGROUND

¶ 3    In April 2018, following a bench trial, defendant was found guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)) and concealment of a homicidal death (*id.* § 9-3.4). The victim was defendant's girlfriend, Moorea Des Roches. Prior to the murder, he and Moorea lived together

in an apartment. In June 2016, the police discovered Moorea's body inside defendant's bedroom closet. An autopsy revealed that Moorea was stabbed and bludgeoned multiple times.

¶ 4 Following a sentencing hearing, the trial court sentenced defendant to 60 years' imprisonment on the murder charge and a consecutive 3-year sentence on the concealment charge, for an aggregate sentence of 63 years' imprisonment. The trial court stated that it considered the presentence investigation report, the evidence offered by the parties, and all the factors in aggravation and mitigation. In mitigation, the trial court noted that defendant had a troubled childhood where he was himself a victim of domestic violence. Defendant was born with drugs in his system and had suffered with mental health issues and drug abuse problems from a very young age. However, the trial court noted that there were attempts at intervention by his sister and the juvenile system to provide defendant with help and support. In aggravation, the trial court considered (1) a psychological evaluation that indicated defendant responded to life situations with violence, experienced intense angry feelings most of the time, and posed a high risk for recidivism; (2) that there were 10 prior incidents of domestic violence against Moorea; and (3) that defendant stabbed and bludgeoned Moorea multiple times with a knife and a kitchen pot and the blows were so violent and forceful that the pot became dented and broken. The trial court concluded that the aggravating factors overwhelmed the mitigating factors.

¶ 5 Defendant filed a motion to reconsider his sentence, arguing in part that the sentence did not afford him an opportunity for rehabilitation and that it was excessive in light of his age at the time of the offenses. At a hearing, defense counsel noted that defendant was 20 years old at the time of the offenses and would not be eligible for parole until he was past 80 years old. Defense counsel argued that the sentence denied defendant any opportunity for rehabilitation. Defense

counsel also argued that the sentence was excessive in light of defendant's young age and because it was his first felony offense as an adult.

¶ 6     After argument by the State, the trial court denied defendant's motion to reconsider his sentence. In response to the argument that the sentence denied defendant an opportunity for rehabilitation, the trial court noted that defendant was eligible for an extended term of up to 100 years but that it did not impose an extended term. In determining the sentence, the trial court stated that it considered the circumstances of defendant's family life and upbringing and defendant's ongoing struggles with his behavioral and mental health. The trial court also stated that it considered all of the appropriate factors in aggravation and mitigation at the original sentencing hearing and that it continued to find that the aggravating factors outweighed the mitigating factors.

¶ 7     On direct appeal, this court affirmed defendant's convictions and sentence. See *People v. Kulpin*, 2021 IL App (2d) 180696. One of the issues raised on direct appeal was that defendant's sentence violated the proportionate penalties clause of the Illinois Constitution because (1) the " 'moral sense of the community ha[d] evolved regarding defendants' " under age 21 and (2) the sentence failed to provide defendant with a real opportunity for rehabilitation. *Id.* ¶ 66. This court found the first issue forfeited because defendant had not shown how the " 'evolving scientific research' " applied to his specific facts and circumstances. *Id.* ¶ 67. We addressed the second issue and rejected it. We noted that, while defendant was eligible for an extended-term sentence of up to 100 years on the murder conviction, the trial court did not impose an extended term. *Id.* ¶ 69. We stated:

"Here, 20-year-old defendant murdered Moorea by stabbing and bludgeoning her multiple times, and then he concealed the crime. Defendant admitted perpetrating 10 prior incidents of domestic abuse toward Moorea. Witnesses to such prior abuse testified to its horrific

nature, which included punching a pregnant Moorea in the stomach and beating Moorea with his fists. At sentencing, the State introduced a recording of a telephone call between defendant, while he was incarcerated in the county jail awaiting trial, and his sister. In that call, defendant coolly admitted to his sister that his trial strategy was to blame Moorea, to deflect responsibility from himself. The [trial] court noted that, as an adult offender, defendant's mental health issues were addressed. The [trial] court considered evidence that defendant responded to life situations with violence." *Id.* ¶ 72.

This court concluded that "the evidence showed a conscienceless defendant to whom the trial court nevertheless granted leniency in not imposing an extended term" (*id.* ¶ 73) and that "defendant fail[ed] to persuade us that his sentence is so wholly disproportionate to the offense that it 'shocks the moral sense of the community' " (*id.* ¶ 74).

¶ 8    In May 2022, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). One of the issues raised was ineffective assistance in that trial counsel failed to argue that, based on *Miller*, defendant's *de facto* life sentence violated the proportionate penalties clause. The trial court appointed counsel and advanced the petition to the second stage.

¶ 9    Postconviction counsel subsequently filed an amended petition, which counsel stated was an addendum to, not a replacement of, the original *pro se* petition. Postconviction counsel argued that trial counsel had adequate information to raise an as-applied challenge under the proportionate penalties clause, specifically noting the existence of a psychological assessment of defendant that was available at the time of sentencing. Postconviction counsel noted that the assessment enumerated specific childhood traumas that defendant endured, and counsel argued that trial counsel failed to use this information to assert that defendant's mental development was delayed

and failed to offer evidence to support the proposition that those traumas hindered defendant's mental development. In support, postconviction counsel cited defendant's appellant brief on direct appeal, which had set forth the childhood traumas defendant experienced and scientific research showing the effects of such trauma. Postconviction counsel further argued that appellate counsel was ineffective in failing to assert that trial counsel was ineffective in not raising the issues at trial and not building an adequate record to show how the evolving juvenile brain science recognized in *Miller* applied to defendant's particular facts and circumstances.

¶ 10    The State filed a motion to dismiss defendant's amended petition. In relevant part, the State argued that defendant's proportionate penalties claim was not viable because defendant still had not connected the dots from the evolving science on juvenile maturity recognized in *Miller* to the defendant's specific facts and circumstances. The parties waived a hearing, and the trial court, reviewing only the written motions, granted the State's motion to dismiss. The trial court found that the *pro se* and amended petitions did not contain any evidence addressing how the evolving science on juvenile maturity and brain development applied to defendant's specific facts and circumstances at the time he committed the murder. The trial court commented that, in his amended postconviction petition, defendant relied on the arguments and evidence set forth in his appellate counsel's opening and reply briefs filed on direct appeal, which were the "same arguments the appellate court considered and rejected as failing to show that the 'evolved science' upon which [defendant] relies applies to the circumstances of his case." Defendant filed a timely notice of appeal from this order.

¶ 11                                II. ANALYSIS

¶ 12    On appeal, defendant argues that postconviction counsel failed to provide a reasonable level of assistance in that counsel neglected to make certain necessary amendments to the *pro se*

petition. Specifically, defendant argues that counsel should have amended the petition to include arguments or evidence to demonstrate that defendant's particular life facts and circumstances made him more akin to a juvenile, subject to *Miller* protections, and less like an adult. See *People v. Thompson*, 2015 IL 118151, ¶ 37 (an as-applied constitutional challenge is by definition dependent on the particular facts and circumstances of an individual defendant). Defendant acknowledges that postconviction counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) and that this creates a rebuttable presumption that counsel provided reasonable assistance. However, defendant contends that the presumption of reasonable assistance is rebutted because postconviction counsel failed to make amendments necessary for an adequate presentation of his proportionate penalties sentencing claim. Defendant argues that the appropriate relief is to remand the case for new second-stage proceedings and proper amendments to his *pro se* petition.

¶ 13    The Act allows a criminal defendant to raise a claim that his conviction resulted from a substantial violation of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). The Act establishes a three-stage process for the adjudication of a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss the petition. See 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2022). At the second stage of proceedings on a postconviction petition, dismissal is warranted "only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Hall*, 217 Ill. 2d 324, 334 (2005). We accept as true all factual allegations not positively rebutted by the record. *People v. Childress*, 191 Ill. 2d 168, 174 (2000). If the defendant makes a substantial showing of a constitutional violation,

the petition advances to the third stage, where the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2022).

¶ 14     A petitioner under the Act has no constitutional right to counsel. Rather, the right to counsel in postconviction proceedings arises from the Act. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel at the second and third stages of postconviction proceedings. *People v. Johnson*, 2018 IL 122227, ¶ 16. To ensure a reasonable level of assistance, Rule 651(c) imposes three duties on postconviction counsel. *Perkins*, 229 Ill. 2d at 42. Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition *necessary* to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. "Under Rule 651(c), postconviction counsel has an obligation to present a defendant's postconviction claims in the appropriate legal form, and the failure to do so constitutes unreasonable assistance." *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18. Nonetheless, "[f]ulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 15     To establish unreasonable assistance, a defendant is not required to make a positive showing that his counsel's failure to comply with Rule 651(c) caused prejudice. *Nitz*, 2011 IL App (2d) 100031, ¶ 18. If postconviction counsel does not comply with Rule 651(c), the case should be remanded regardless of whether the claims in a *pro se* or amended postconviction petition have

any merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). Substantial compliance with Rule 651(c) is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on motion of the State, is *de novo*. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 16    In the present case, defendant cannot make a substantial showing that postconviction counsel's performance was unreasonable. Postconviction counsel filed a certificate indicating his compliance with Rule 651(c). Where counsel files a Rule 651(c) certificate, there is a presumption that counsel provided reasonable assistance, and a defendant has the burden of overcoming that presumption. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 25. Defendant's arguments fail to overcome this presumption because, as his underlying argument has no merit as a matter of law, any amendments cannot be deemed "necessary" under the meaning of Rule 651(c). *Greer*, 212 Ill. 2d at 205.

¶ 17    "The proportionate penalties clause of the Illinois Constitution provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' " *People v. Brooks*, 2022 IL App (3d) 190761, ¶ 11 (quoting Ill. Const. 1970, art. I, § 11). A statute violates the proportionate penalties clause if the punishment for the offense "is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Id.* Punishments satisfying this standard have not been defined because, "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *People v. Miller*, 202 Ill. 2d 328, 339 (2002). Since *Miller v. Alabama*, our supreme court has

"opened the door to the possibility that a young-adult offender might demonstrate, through an adequate factual record, that his or her own specific characteristics were so like those of

a juvenile that imposition of a life sentence absent the safeguards established in *Miller* was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." (Internal quotation marks omitted.) *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 27 (citing *People v. Klepper*, 234 Ill. 2d 337, 348 (2009)).

¶ 18    Nonetheless, defendant's argument that his discretionary sentence violated the proportionate penalties clause has been foreclosed by recent case law. In *People v. Clark*, 2023 IL 127273, the defendant, citing *Miller*, moved for leave to file a successive postconviction petition on the basis that his extended-term 90-year *de facto* life sentence for first degree murder violated the proportionate penalties clause of the Illinois Constitution because the trial court did not give sufficient weight to his intellectual disabilities or his age as mitigating factors before sentencing him. In denying the defendant leave to file his successive petition, our supreme court stated:

> "By sentencing defendant to 90 years for first degree murder, the circuit court issued a discretionary *de facto* life sentence, making the reasoning of the *Miller* decision not applicable to defendant's sentence. [Citation.] The reasoning in *Miller* does not apply to discretionary life sentences under proportionate penalties clause standards where the circuit court does consider all relevant mitigating factors at sentencing and the circuit court's exercise of discretion is supported by the evidence in the record." *Id.* ¶ 72.

¶ 19    Later that year, in *People v. Hilliard*, 2023 IL 128186, ¶ 11, the defendant raised in a *pro se* postconviction petition an as-applied proportionate penalties challenge to the mandatory firearm enhancement portion of his sentence. The *Hilliard* defendant was 18 years old when he committed the offense of which he was convicted, attempted first degree murder (*id.* ¶ 1), and he was sentenced to 15 years' imprisonment with a 25-year firearm enhancement, for a total sentence of 40 years' imprisonment (*id.* ¶ 9), which was not a mandatory life sentence (*id.* ¶ 27). Our supreme

court noted that the cases the defendant relied on did "not provide support for his proportionate penalties claim, beyond the general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record." *Id.* (noting the defendant's reliance on *People v. House*, 2021 IL 125124, ¶ 31, *People v. Harris*, 2018 IL 121932, ¶¶ 39, 41, and *Thompson*, 2015 IL 118151, ¶ 44). Rather, those cases "were directing the possibility of as-applied proportionate penalties clause postconviction challenges to young adults who received *mandatory* life sentences." (Emphasis added.) *Hilliard*, 2023 IL 128186, ¶ 28; *People v. Williams*, 2024 IL 127304, ¶ 29 (noting the possibility of *Miller*-based proportionate penalties claims, "with respect to *mandatory* life sentences in *initial* postconviction petitions" (emphases in original and internal quotation marks omitted)). The court stated that, to the extent previous cases allowed as-applied proportionate penalties postconviction claims based on *Miller* for young adults, those cases should be used to advance proportionate penalties claims only in situations where their analyses applied—those with mandatory sentences and initial postconviction petitions. See *Hilliard*, 2023 IL 128186, ¶ 28.

¶ 20    In so ruling, the *Hilliard* court acknowledged that a proportionate penalties challenge was nonetheless not limited to just juveniles or individuals with life sentences. *Id.* ¶ 29. The court thus went on to address the defendant's challenge to the mandatory firearm enhancement as applied to him. The court concluded that, even assuming that the defendant's brain was not fully developed when he committed the offense and that he had rehabilitative potential, the circumstances of the case provided "no arguable basis in law" to conclude that the sentence was unconstitutionally disproportionate. *Id.* ¶ 40. The court noted that, in determining an appropriate sentence, it was not necessary to give greater weight to rehabilitation than to the seriousness of the offense and "that defendant chose to fire multiple shots at [the victim] at close range with no demonstrated

provocation in an attempt to kill him." *Id.* The court affirmed the summary dismissal of the defendant's petition. *Id.* ¶ 43.

¶ 21    In the present case, defendant was sentenced to a discretionary *de facto* life sentence. The trial court could have imposed a sentence as low as 20 years for the first degree murder and 2 years for the concealment, for a minimum aggregate sentence of 22 years imprisonment. As such, defendant's aggregate sentence of 63 years' was a discretionary *de facto* life sentence. See *People v. Buffer*, 2019 IL 122327, ¶ 41 (defining a *de facto* life sentence for juveniles as a sentence greater than 40 years). Accordingly, based on *Clark*, *Hilliard*, and *Williams*, defendant's claim that, based on *Miller* principles, his sentence violated the proportionate penalties clause is without merit, as *Miller* is not applicable to his discretionary sentence.

¶ 22    We acknowledge that a defendant of any age can raise a proportionate penalties challenge to a sentence of any length. See *Hilliard*, 2023 IL 128186, ¶ 29. However, unlike *Hilliard*, we need not address defendant's argument as a general proportionate penalties challenge to his sentence, as this court already addressed that issue on direct appeal. In rejecting that claim, this court noted that the trial court considered all the appropriate factors in aggravation and mitigation, and we determined that defendant's sentence did not violate the proportionate penalties clause, as it was not wholly disproportionate and did not shock the moral sense of the community. See *Kulpin*, 2021 IL App (2d) 180696, ¶¶ 70, 74. As such, our holding today is that, to the extent defendant is now seeking to raise a proportionate penalties challenge based only on *Miller*, the claim is without merit as a matter of law.

¶ 23    Moreover, even if defendant could raise a *Miller*-based proportionate penalties challenge to his discretionary life sentence and he was able to connect the evolving neuroscience underlying

*Miller* to his particular circumstances, our decision would be the same. To establish a proportionate penalties challenge to a life sentence, based on *Miller* principles, the defendant must show:

"(1) at the time of the commission of the underlying offense, his or her own specific characteristics—those related to youth, level of maturity, and brain development—placed him or her in the same category as juvenile offenders described in *Miller* and (2) his or her sentencing was not *Miller* compliant, in that a life sentence was imposed without regard for the offender's youth and its attendant characteristics." *People v. Cortez*, 2021 IL App (4th) 190158, ¶ 47.

In *Jones v. Mississippi*, 593 U.S. 98, 111 (2021), the United States Supreme Court stated that imposing a discretionary life sentence requires only "[a] hearing where youth and its attendant characteristics are considered as sentencing factors *** to separate those juveniles who may be sentenced to life without parole from those who may not." (Internal quotation marks omitted.) "[U]nless a sentencing court 'expressly refuses as a matter of law to consider the defendant's youth ***' [citation], a discretionary sentencing scheme, in itself, satisfies *Miller*'s requirement that sentencing courts account for youth and its attendant circumstances." *People v. Wilson*, 2023 IL 127666, ¶ 38 (quoting *Jones*, 593 U.S. at 115 n.7).

¶ 24    In the present case, defendant's proportionate penalties claim also fails because his sentencing was *Miller* compliant, as the trial court did not expressly refuse to consider the defendant's age. See *id.* Rather, the trial court considered the presentence investigation report, medical records, and psychological evaluations. The trial court was aware of defendant's age and addressed his troubled childhood. Further, defendant argued, in his motion to reconsider his sentence, that his sentence was excessive in light of his young age and that the trial court failed to consider his potential for rehabilitation. The trial court considered and rejected these arguments.

The record thus demonstrates that defendant was afforded a sentencing procedure that considered his age and immaturity. Accordingly, as defendant's sentence complied with *Miller*, any proportionate penalties claim based on *Miller* principles is without merit for this reason as well.

¶ 25     For the foregoing reasons, we cannot conclude that the presumption of reasonable assistance has been rebutted. As recent supreme court case law is fatal to defendant's claim, postconviction counsel cannot be deemed unreasonable, because any alleged amendments showing how evolving brain science applied to defendant's specific circumstances would have only furthered a nonmeritorious claim, and thus, they were not "necessary" within the meaning of Rule 651(c). See *Greer*, 212 Ill. 2d at 205. Because defendant did not rebut the presumption of reasonable assistance, the rule that the failure to provide reasonable assistance requires a remand regardless of prejudice does not apply. Thus, the trial court did not err in dismissing defendant's petition at the second stage.

¶ 26                                   III. CONCLUSION

¶ 27     For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 28     Affirmed.

***People v. Kulpin*, 2025 IL App (2d) 240065**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 16-CF-401; the Hon. Joseph C. Pedersen, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and S. Amanda Ingram, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Riley Oncken, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Adam J. Rodriguez, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |