2026 IL App (2d) 240620-U
No. 2-24-0620
Order filed February 18, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. JESSIE Z. SWIFT, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Robert K. Villa, Judge, Presiding.
No. 99-CF-191

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant failed to establish cause for the filing of his amended successive postconviction petition. Defendant's postconviction counsel provided reasonable assistance in his second-stage postconviction proceedings.

¶ 2    Defendant was convicted of two counts of first-degree murder and single counts of attempted first-degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm. The trial court sentenced defendant to an aggregate 65 years' imprisonment. On direct appeal, this court affirmed defendant's convictions and sentences for attempted first-degree murder and a single conviction for first-degree murder but vacated the remaining convictions. *People v. Swift*, 332 Ill. App. 3d 1144 (2002) (unpublished order under Illinois Supreme Court Rule 23). Defendant subsequently filed a post-conviction petition that was dismissed at second-stage and

affirmed on appeal. *People v. Swift*, 2013, IL App (2d) 111116-U. Defendant then moved for leave to file a successive post-conviction petition and was appointed post-conviction counsel. Counsel filed an amended successive post-conviction petition that was dismissed by the trial court on the State's motion. Defendant appeals here from that dismissal and contends that his cause should be remanded for an evidentiary hearing because his pleadings made a substantial showing that his *de facto* life sentence, as applied to him, violated the proportionate penalties clause of the Illinois Constitution. Defendant also contends that his post-conviction counsel provided unreasonable assistance in filing an amended petition that omitted scientific articles and certificates included in defendant's *pro se* petition. For the reasons that follow, we affirm the dismissal of his amended successive post-conviction petition.

¶ 3                                I. BACKGROUND

¶ 4      On February 17, 1999, defendant was indicted on two counts of first-degree murder, two counts of attempted first-degree murder, one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm. On August 28, 2000, defendant's jury trial commenced. Joshua Tooley testified that, on the night of January 21, 1999, he and two friends, Kevin McClernon and Justin Turner, went to a Shell gas station for gas. Tooley testified that he looked up and saw defendant. He testified that defendant walked past in close proximity to his vehicle. Tooley testified that, "I heard some screaming and looked back and saw Jessie running towards Calvin Pryor shooting." Tooley testified that he heard approximately five shots and saw defendant shoot towards Pryor two or three times. Tooley testified that after the shots stopped for "a second," he started to get up. He witnessed defendant three or four feet from him. Tooley then witnessed defendant shoot McClernon. Tooley testified that he had known defendant for six or seven years, went to school with him, lived a couple blocks from him, and had been on a junior high football

- 2 -

team with him. Tooley identified defendant as the shooter. Justin Turner testified that, on the night of the incident, he, Tooley, and McClernon drove to a nearby gas station. Turner testified that the gas station was well lit; he stated, "it's [sic] clear as day." Turner testified that he noticed defendant standing approximately 15 feet from his vehicle. Turner testified that, just as he was about to step out of his car, he heard three gunshots and heard the victim screaming. He testified that he heard two more shots and then everything was quiet for a few seconds. Turner testified that he "saw a blur, ducked down again, and that's when the bullet went through my passenger's window and shot Kevin." Turner testified that he did not specifically see defendant shoot either victim, but identified defendant as being at the gas station at the time of the shooting. Turner testified that he had known defendant for approximately six years, went to school with him, and was on a junior high football team with him. Turner identified defendant to police.

¶ 5    The surviving victim, Kevin McClernon, testified at trial that he was at the Shell station on the night of the incident in Turner's car with Tooley when he noticed a man walking toward their vehicle. He testified that he told his friends, "[T]hat's Jessie Swift and [it] looks like he's strapping, which means looks like he's got a gun on him." McClernon testified that he heard gunshots, after defendant walked past and then he heard screaming. McClernon testified that the man walked around their vehicle and that he saw the man pointing something at him. McClernon was unable to recall whether he saw a gun or a flash. McClernon covered his head and was shot.

¶ 6    McClernon testified that his friends drove him to the hospital. He did not recall speaking with police officers while in the emergency room. He testified that he did not recall telling police officers that a black man shot him but that he was " 'light-headed' and 'out of it' at the time." McClernon later identified defendant as the person he saw at the Shell station on the night of the incident.

¶ 7    Defendant testified that he was not involved in the shooting and was at home during the time that the shooting occurred. Defendant's girlfriend, his cousin, his stepfather, and his brother also testified that defendant was at home when the incident occurred.

¶ 8    Defendant was convicted of two counts of first-degree murder, two counts of attempted first-degree murder, one count of aggravated battery with a firearm, and one count of aggravated discharge of a firearm. On November 6, 2000, the trial court held a sentencing hearing. Defendant's trial counsel did not present any witnesses or independent evidence in mitigation. Instead, counsel argued that imposing consecutive sentences would violate *Apprendi*. See *Apprendi v. New Jersey,* 530 U.S. 446 (2000) (holding that other than a prior conviction, any fact that increases the penalty beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt). The trial court determined that *Apprendi* did not prohibit the trial court from imposing consecutive sentences in the current matter. As to the trial court's address of defendant's youth, it found his youth to be a non-statutory factor in mitigation.

¶ 9    The trial court found that consecutive sentences were required to protect the public from further criminal conduct by defendant pursuant to 730 ILCS 5/5–8–4(b) (West 1998). The trial court sentenced defendant to two concurrent 50–year sentences on the first-degree murder convictions to be served consecutive to a 15–year sentence on the attempted murder conviction and concurrent terms of 10 and 7 years' imprisonment on the convictions for aggravated battery with a firearm and aggravated discharge of a firearm, respectively.

¶ 10   On January 17, 2001, defendant filed his notice of appeal. Appellate counsel argued that (1) defendant's convictions and sentences for aggravated battery with a firearm and aggravated discharge of a firearm must be vacated where those convictions were predicated upon the same physical acts as the murder and attempted murder, and (2) defendant's 50–year sentence for the

murder conviction was excessive. On August 13, 2002, we affirmed a single conviction and sentence for first-degree murder and a single conviction and sentence for attempted first-degree murder and vacated defendant's remaining convictions. See *People v. Swift,* No. 2–01–0080 (August 13, 2002) (unpublished order under Supreme Court Rule 23).

¶ 11 On March 4, 2003, defendant filed a *pro se* postconviction petition. Defendant argued that his trial counsel was ineffective because counsel did not investigate and interview witness Joshua Correa, who defendant claimed would have testified that he saw a "tall black man" leaving the scene moments after the shooting at the Shell station. Defendant further argued that his trial counsel was ineffective because his trial counsel failed to call any character witnesses to testify in mitigation during his sentencing hearing. Defendant's petition alleged that defendant offered trial counsel a list of character witnesses who could testify on his behalf, but on the day of the sentencing hearing, counsel admitted to defendant that he had misplaced the list and had, therefore, failed to subpoena defendant's character witnesses. On July 1, 2003, the trial court advanced defendant's petition to second-stage proceedings and appointed counsel to represent defendant.

¶ 12 On April 2, 2009, postconviction counsel filed an amended postconviction petition. In the amended petition, postconviction counsel expanded upon defendant's *pro se* ineffective-assistance-of-counsel claim and argued that newly discovered evidence proved defendant's actual innocence. Specifically, postconviction counsel argued that defendant received the ineffective assistance of counsel because (1) trial counsel failed to investigate or interview Correa, although Correa would testify that he saw a black man leaving the scene of incident and (2) trial counsel failed to call any character witnesses to testify in mitigation during defendant's sentencing hearing. With regard to newly discovered evidence, postconviction counsel asserted that it had recently come to light that another man, Jovan Daniels, was riding in the vehicle with Correa on the night

of the incident and witnessed a black man running from the scene with something shiny in his hand moments after the shooting. Postconviction counsel argued that the statements of Correa and Daniels, as was outlined in the affidavits attached to the amended petition, corroborated the initial statement of McClernon that he was shot by a black man and, taken as a whole, showed that defendant is actually innocent. Last, postconviction counsel argued that defendant's appellate counsel was ineffective for failing to raise meritorious issues regarding the "admission of irrelevant, highly prejudicial evidence and prosecutorial misconduct." Specifically, postconviction counsel asserted that the State's actions of referencing the videotape at trial, "in direct violation of the trial court's order," prejudiced defendant. Postconviction counsel asserted that, although the trial court attempted to remedy the situation by instructing the jury regarding the videotape, prejudice remained because "the jury was left to speculate as to why they did not see the tape." Moreover, postconviction counsel asserted that appellate counsel was ineffective for failing to raise the issue of prosecutorial misconduct during closing arguments. Specifically, postconviction counsel asserted that, during closing arguments, the State told the jury that defendant's "alibi witnesses put him at the scene of the crime at the time of the crime in the area of the offense." The trial court transcripts indicate that defendant's alibi witnesses all testified that defendant was at his home when the incident occurred. Postconviction counsel asserted that this constituted "blatant prosecutorial misconduct" and was a meritorious issue that should have been raised on appeal.

¶ 13    On February 25, 2010, the State filed a motion to dismiss the petition arguing that defendant's original *pro se* petition was untimely and without merit. The State asserted that defendant's petition was due before March 3, 2003. The State further argued that that any evidence from Correa or Daniels was insignificant because it did not establish defendant's actual innocence in that neither Correa nor Daniels witnessed the shooting. The State also argued that, because

Daniels was listed as a potential witness on the State's answer to discovery, any evidence he could introduce was not newly discovered. Regardless, the State argued Correa and Daniels were not credible witnesses due to their prior convictions. Last, the State argued that the ineffective assistance of appellate counsel claim failed on its merits. Postconviction counsel replied to the State's motion to dismiss. Postconviction counsel argued that the *pro se* petition was timely and supported its argument by citing *People v. Mitchell* (296 Ill.App.3d 930 (1998)), which involved the same statutes in the instant case and held that a postconviction petition filed six months and 35 days after an appellate court decision was timely.

¶ 14    On October 17, 2011, the trial court found that the petition was timely but granted the State's motion to dismiss on the merits. The trial court found that trial counsel's decision not to call Correa or Daniels to testify was not prejudicial because neither man witnessed the crime, both men failed to come forward in a timely fashion, and two other eyewitnesses identified defendant as the shooter. The trial court also found that the claim of ineffective assistance of trial counsel for failing to present witnesses in mitigation failed because defendant's petition did not identify the witnesses or the content of their proposed testimony. Additionally, the trial court found the allegation of ineffective assistance of appellate counsel was without merit because the claims of prosecutorial misconduct were not "so egregious as to call into question appellate counsel's competency" for failing to challenge them on appeal. This court affirmed the dismissal on appeal. *Swift*, 2013 IL App (2d) 111116-U, ¶¶ 20-33.

¶ 15    On October 22, 2019, defendant filed a *pro se* motion for leave to file a successive post-conviction petition challenging his sentence under the eighth amendment of the United States Constitution and under the proportionate penalties clause of the Illinois Constitution. Defendant asserted that *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Buffer*, 2019 IL 122327, and their

progeny provided a new substantive rule regarding considerations of defendant's youth when sentenced. In his petition, he acknowledged that he was not a juvenile offender at the time of the offense but argued that considerations of his youth should have been considered at sentencing. Defendant attached to his petition a copy of his GED, certificates of completion and achievement for programs he took in prison, articles related to extending juvenile sentencing provisions to emerging adults, and a portion of the trial court's findings from his sentencing hearing.

¶ 16    The trial court granted defendant leave to file the petition and advanced it to second-stage proceedings. Post-conviction counsel was appointed. On August 15, 2022, defendant's counsel filed an amended successive post-conviction petition wherein defendant claimed that he was entitled to a new sentencing hearing because the trial court did not consider his youth and attendant circumstances before handing down his 65-year sentence. The amended petition argued that he could show cause for not including the claim in his first post-conviction petition because *Miller* had not yet been decided in 2003. Attached to the petition was a May 30, 2021, report prepared by Dr. James Garbarino. The report detailed, *inter alia*, defendant's tumultuous childhood, scientific studies and articles on "emerging adulthood" and the development of adolescent brains, and the reasons why Dr. Garbarino believed the *Miller* should apply to defendant's sentence.

¶ 17    Defendant's amended successive post-conviction petition also contained an attached admission from defendant that he committed the charged offenses. To wit:

> "I was a coward. Out of fear I killed a man and almost killed another. Every day I regret what I did that night and I wish I could take it all back. I had dug my own grave with choosing to join a gang, and rather than accept my own fate I took another human being's life and severely injured another person. A child had to grow up without a father because of me. I cut a deep hole into the Pryor family by taking their loved one, Calvin, Jr., from

them. I can only imagine the amount of pain that I caused. I am truly sorry and remorseful for what I have done. I know there is nothing that I can say to ease their pain, but if I was ever given the opportunity to apologize to the Pryor family and to Kevin McClernon and his family I would do so sincerely and wholeheartedly. My heart is full of sorrow and regret for what I did to them."

Defendant's counsel also attached Rule 651(c) certificate to the amended successive post-conviction petition.

¶ 18    The State moved to dismiss the petition, arguing, *inter alia*, that defendant failed to show cause for not raising the available proportionate penalties claim in his original post-conviction petition as *Miller* does not extend to young adults who are 18 years or older at the time of their offense.

¶ 19    The trial court granted the State's motion to dismiss, finding that defendant failed to establish cause for his failure to raise both the eighth amendment and proportionate penalties claims in his original post-conviction petition. Defendant then timely filed the present appeal.

¶ 20                                      II. ANALYSIS

¶ 21    Defendant contends that this cause should be remanded for an evidentiary hearing because his pleadings made a substantial showing that his *de facto* life sentence, as applied to him, violated the proportionate penalties clause of the Illinois Constitution. Further defendant contends that his post-conviction counsel provided unreasonable assistance in filing an amended petition that omitted scientific articles and certificates included in defendant's *pro se* petition. We address each of these contentions in turn.

¶ 22    As defendant's first contention arises from the trial court's dismissal of his successive post-conviction petition at the second stage of proceedings, this court's review of that dismissal is *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 23    The Post-Conviction Hearing Act (the Act), 725 ILCS 5/122-1 *et seq*., provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Robinson*, 2020 IL 123849, ¶ 42. The Act is not a substitute for an appeal but offers a mechanism for a criminal defendant to assert a collateral attack on a final judgment. *Id.* Therefore, where a petitioner has previously challenged a judgment of conviction on appeal, the judgment of the reviewing court will serve to bar post-conviction review of all issues actually decided by the reviewing court as well as any other claims that could have been presented to the reviewing court. *Id.* Only one post-conviction proceeding is contemplated under the Act. *Id.* However, the bar against successive proceedings will be relaxed on two grounds. *Id.* The first is where the petitioner can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding. *Id.*; see also 725 ILCS 5/122-1(f) (West 2024). The second is where the petitioner asserts a fundamental miscarriage of justice based on actual innocence. *Id*. Here, defendant did not raise a claim of actual innocence in his successive post-conviction petition. As such, we limit our analysis as to whether he established cause and prejudice for failing to assert that his sentence violated the proportionate penalties clause of the Illinois Constitution in his original post-conviction petition.

¶ 24    In order to succeed on a successive post-conviction claim, defendant must show: (1) cause by identifying an objective factor that impeded his ability to raise a specific claim during his initial post-conviction proceedings; and (2) prejudice by demonstrating that the claim not raised during his initial post-conviction proceedings so infected the trial that the resulting conviction or sentence

- 10 -

violated due process. 725 ILCS 5/122-1(f) (West 2024). Both elements of the cause and prejudice test must be satisfied for defendant to prevail. *People v. Guerrero*, 2012 IL 112020, ¶ 15.

¶ 25    Defendant argues that his amended successive post-conviction petition made a substantial showing of both cause and prejudice. He claims that in his original 2003 postconviction petition, he had no basis for raising an as-applied challenge to his *de facto* life sentence under the Illinois Constitution, as the support for such a claim did not arise until 2012 when *Miller v. Alabama*, 567 U.S. 460, was decided. Therefore, he argues, because he could not have raised this claim in 2003, he had demonstrated cause for his failure to raise the claim in his original post-conviction petition.

¶ 26    Our supreme court has recently confronted and rejected defendant's contention. *Miller* held that the eight amendment prohibits mandatory sentencing of a juvenile to life in prison without parole. *Miller*, 567 U.S. at 489. In *Moore*, our supreme court held that "*Miller*'s announcement of new substantive rule under the eighth amendment does not provide cause for a juvenile offender to raise a claim under the proportionate penalties clause." *People v. Moore*, 2023 IL 126461, ¶ 40, quoting *People v. Clark*, 2023 IL 127273, ¶ 61. Further, the *Moore* court held that "[a]s *Miller* does not apply to young adults, it does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause. *Moore*, 2023 IL 126461, ¶ 40.

¶ 27    In *Clark*, the defendant, citing *Miller*, moved for leave to file a successive postconviction petition on the basis that his extended-term 90-year *de facto* life sentence for first degree murder violated the proportionate penalties clause of the Illinois Constitution because the trial court did not give sufficient weight to his intellectual disabilities or his age as mitigating factors before sentencing him. In denying the defendant leave to file his successive petition, our supreme court stated:

"By sentencing defendant to 90 years for first degree murder, the circuit court issued a discretionary *de facto* life sentence, making the reasoning of the *Miller* decision not applicable to defendant's sentence. [Citation.] The reasoning in *Miller* does not apply to discretionary life sentences under proportionate penalties clause standards where the circuit court does consider all relevant mitigating factors at sentencing and the circuit court's exercise of discretion is supported by the evidence in the record." *Clark*, 2023 IL 127273, ¶ 72.

¶ 28    This court has applied the holdings in both *Moore* and *Clark* to reject defendant's proportionate penalties claim against a discretionary sentence. In *People v. Brown*, 2023 IL App (2d) 220334, the defendant argued that his successive post-conviction petition was improperly dismissed because the trial court did not specifically address his proportionate penalties claim. In affirming the dismissal, this court held that defendant's proportionate penalties claim was never viable. "Putting aside the fact that *Miller* does not directly apply to young adults, like defendant here, *Miller* [also] does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders." *Brown*, 2023 IL App (2d) 220334, ¶ 32, citing *Moore*, 2023 IL 126461, ¶¶ 40, 42.

¶ 29    Defendant directs this court to our holding in *People v. Green-Hosey*, where we found that a defendant's sentencing hearing did not comply with *Miller* even though the trial court acknowledged the defendant's youth "but did not apparently weigh how the impulsivity or impetuosity accompanying defendant's youth impacted" his actions, and did not have the tools at the time "to consider defendant's capacity, given his age and how his circumstances impacted his brain development, to appreciate the consequences of his actions." *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 71. Defendant's reliance on this case is misguided as the trial court in *Green-*

*Hosey* lacked discretion to consider the defendant's youth and its attendant circumstances when handing down a mandatory life sentence. *Id*. ¶ 70. Such was not the case in the present appeal.

¶ 30   Defendant's situation is more akin to this court's holding in *People v. Kulpin*, 2025 IL App (2d) 240065, where the defendant, after receiving a discretionary *de facto* life sentence, argued that his post-conviction counsel failed to provide reasonable assistance by omitting arguments or evidence to demonstrate that the defendant's life facts and circumstances made him more akin to a juvenile, subject to *Miller* protections. This court rejected that argument, holding that "based on *Clark* \*\*\* defendant's claim that, based on *Miller* principles, his sentence violated the proportionate penalties clause is without merit, as *Miller* is not applicable to his discretionary sentence." *Kulpin*, 2025 IL App (2d) 240065, ¶ 21.

¶ 31   We must hold that defendant has failed to show cause to prevail on his amended successive post-conviction claim. As *Miller* did not change the law applicable to discretionary sentences imposed on young adult offenders, it does not provide cause for defendant to prevail on his claim raised before this court. See *Moore*, 2023 IL 126461, ¶ 44; see also *Clark*, 2023 IL 127273, ¶ 72. Moreover, the evidence and arguments raised at defendant's sentencing hearing shows that the parties knew Illinois law recognized the special status of young adults, especially those subject to adverse influences, for purposes of applying the principles of the proportionate penalties clause. *Moore*, 2023 IL 126461, ¶ 42. At defendant's sentencing hearing, the trial court considered his age, education level, criminal background, substance abuse history, familial substance abuse history, facts of the crime, degree of defendant's participation in the offense, seriousness of the offense, and the presence of familial or peer pressure.

¶ 32   Defendant had "the essential legal tools" to raise his present proposed claim under the proportionate penalties clause when he filed his previous post-conviction petition. *Id*. Based on

the foregoing, this court affirms the trial court's dismissal of defendant's amended successive post-conviction petition. As our ruling on cause disposes of this claim, we need not address whether defendant adequately stated a prima facie showing of prejudice. See *Id*.

¶ 33   Before moving to defendant's next contention, based on the record before us we must take issue with defendant's argument concerning his tumultuous childhood, scientific studies and articles on "emerging adulthood" and the development of adolescent brains, and the reasons why Dr. Garbarino believed that *Miller* should apply to defendant's sentence. At trial, defendant testified that he was not involved in the shooting and was at home during the time that the shooting occurred. He had his girlfriend, his cousin, his stepfather, and his brother testify to that effect. In his direct appeal in 2001, he maintained his innocence. In his 2003 *pro se* postconviction petition, he argued that his trial counsel was ineffective because counsel did not investigate and interview witness Joshua Correa, who defendant claimed would have testified that he saw a "tall black man" leaving the scene moments after the shooting. In 2009, he allowed his postconviction counsel to file an amended postconviction petition that expanded upon defendant's *pro se* ineffective-assistance-of-counsel claim and argued that newly discovered evidence proved defendant's actual innocence. It was not until sometime around 2021, when defendant was at least 40 years old, that he finally admitted that he killed Calvin Pryor, Jr., and shot Kevin McClernon. Defendant's decades of deceit and dishonesty, beginning in 1999 and continuing until 2021, undercuts much of his contention, and Dr. Garbarino's opinion, that defendant's "turning point occurred when [he] was 28 years of age, the point at which brain maturation has come to fruition." In defendant's case, the record shows that his point of maturation and remorse came at approximately, perhaps coincidentally, at the same time that he had virtually exhausted his avenues of appeal.

¶ 34　　We next address defendant's contention that his post-conviction counsel provided unreasonable assistance in filing an amended petition that omitted scientific articles and certificates included in defendant's *pro se* petition. He argues that the scientific articles and educational certificates support his contention are "new evidence supporting his claim that he could show cause for filing a successive petition."

¶ 35　　A petitioner under the Act has no constitutional right to counsel. Rather, the right to counsel in postconviction proceedings arises from the Act. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Under the Act, petitioners are entitled to a "reasonable" level of assistance of counsel at the second and third stages of postconviction proceedings. *People v. Johnson*, 2018 IL 122227, ¶ 16. To ensure a reasonable level of assistance, Rule 651(c) imposes three duties on postconviction counsel. *Perkins*, 229 Ill. 2d at 42. Pursuant to the rule, either the record or a certificate filed by the attorney must show that counsel (1) consulted with the petitioner to ascertain his contentions of constitutional deprivations, (2) examined the record of the trial proceedings, and (3) made any amendments to the filed *pro se* petition necessary to adequately present the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017); *Perkins*, 229 Ill. 2d at 42. "Under Rule 651(c), postconviction counsel has an obligation to present a defendant's postconviction claims in the appropriate legal form, and the failure to do so constitutes unreasonable assistance." *People v. Nitz*, 2011 IL App (2d) 100031, ¶ 18. Nonetheless, "[f]ulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 36    To establish unreasonable assistance, a defendant is not required to make a positive showing that his counsel's failure to comply with Rule 651(c) caused prejudice. *Nitz*, 2011 IL App (2d) 100031, ¶ 18. If postconviction counsel does not comply with Rule 651(c), the case should be remanded regardless of whether the claims in a *pro se* or amended postconviction petition have any merit. *People v. Suarez*, 224 Ill. 2d 37, 47 (2007). Substantial compliance with Rule 651(c) is sufficient. *People v. Richardson*, 382 Ill. App. 3d 248, 257 (2008). Our review of an attorney's compliance with a supreme court rule, as well as the dismissal of a postconviction petition on motion of the State, is *de novo. People v. Jones*, 2011 IL App (1st) 092529, ¶ 19.

¶ 37    The record shows that defendant's post-conviction counsel filed a certificate indicating compliance with Rule 651(c). Where counsel files a Rule 651(c) certificate, there is a presumption that counsel provided reasonable assistance, and a defendant has the burden of overcoming that presumption. *Kulpin*, 2025 IL App (2d) 240065, ¶ 16. Because defendant's underlying argument regarding violations of the proportionate penalties clause of the Illinois Constitution has no merit as a matter of law, defendant cannot overcome the presumption that he was provided reasonable assistance. Any further amendments to the petition would only be tantamount to further advancing a non-meritorious claim and, thus, not necessary to advancing defendant's claim withing the meaning of Rule 651(c). *Id*. ¶ 25.

¶ 38                                          III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 40    Affirmed.